IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| IN RE: | * | |
| | * | |
| ERIK B. CHERDAK | * | Case no. 16-25927-TJC |
| | * | Chapter 11 |
| Debtor | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
TO COMPEL DEBTOR TO FILE AMENDED MONTHLY OPERATING REPORTS,
TO COMPEL RECOVERY OF UNAUTHORIZED POST-PETITION TRANSFERS
AND OTHER ANCILLARY RELIEF

The Official Committee of Unsecured Creditors of Erik B. Cherdak (the "Committee"), by its undersigned counsel, hereby moves this Court for the entry of an Order compelling the debtor in possession to file amended monthly operating reports to provide such information as required by the Guidelines of the Office of the U.S. Trustee, to compel the recovery of unauthorized post-petition transfers, and for other ancillary relief, and in support thereof, states as follows:

Background

1. On December 5, 2016 (the "Petition Date"), Erik B. Cherdak (the "Debtor") filed a proceeding under chapter 13 of Title 11 of the United States Code.

2. On January 17, 2017, the Debtor filed a motion to convert this case to chapter 11.

3. On February 6, 2017, the Court entered an order granting the motion to convert.

1

4.      The Debtor is now in possession of his property and the management of his business as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

5.      On February 24, 2017, the Office of the U.S. Trustee appointed a committee of unsecured creditors.

6.      The Operating Guidelines and Reporting Requirements of the United States Trustee for Chapter 11 Debtors in Possession (the "Guidelines") require the Debtor to file monthly operating reports ("MOR") for each month in which he is a Debtor in Possession. Each such MOR is due by the 20th of the month following the month covered by the report. Since this case was converted to one under chapter 11 on February 6, 2017, the Debtor has been required to file monthly operating reports from that date forward.

7.      The Guidelines require that certain information be provided in the operating reports, such as a cash disbursements retail and cash receipts detail and that certain documentation be attached to such reports such as bank statements. To date, the Debtor has not complied with the Guidelines. The Committee has asked the Debtor to amend his MORs to provide the requested information but the Debtor has failed to do so.

8.      The Committee believes that the monthly operating reports filed by the Debtor are deficient. Listed below are deficiencies for each report as filed, that the Committee believes require the Debtor to file amended reports:

<u>MOR for 1/27/17 – 2/23/17</u>

9.      The Debtor filed his MOR for the period from 1/27/17 through 2/23/17 on June 28, 2017 (docket no. 123) (the "February MOR").

10.     The February MOR is deficient for the following reasons:

a. The beginning and ending cash balances do not match the balances on the bank statements attached to the February MOR.

b. The February MOR provides that $6,000 was paid for "legal/professional fees/U.S. Trustee fees" but does not provide the court order authorizing such payment, as required by the Guidelines or provide any explanation for the payment.

c. The February MOR indicates that the Debtor in Possession used two accounts, M&T account ending 3648 and BOA account ending 3604, but fails to attach a copy of the M&T account statement, as required by the Guidelines.

d. The February MOR is not complete, as the Debtor failed to complete the Cash Receipts Detail and the Cash Disbursements Detail. As a result, parties are unable to determine to whom checks were paid and the purpose for such payments.

e. Further, while the Debtor did include a Bank of America ("BOA") statement, the bank statement attached to the February MOR is for the period from 2/24/17 through 3/28/17 and not for the period covered by the February MOR.

f. After reviewing the February MOR when filed, the Committee requested and was provided with a copy of the BOA account ending 3604 statement for the period covered by the February MOR. A copy is attached as Exhibit 1. The BOA statement shows two cash withdrawals by the Debtor on 1/31/17 for $4,500.00 and on 2/15/17 for $5,300.00. No explanations are provided for such withdrawals on the February MOR, as filed.

g. The BOA statement ending 3604 shows a transfer to BOA account ending 6063 in the amount of $1,000.00, which account is not listed on the February

MOR, as filed. The February MOR does not provide any explanation for this transfer and does not provide any information on the BOA account ending 6063.

  h. The BOA statement ending 3604 shows a check written to Lauren Cottone, the Debtor's spouse, on 2/3/17 in the amount of $3,000.00, which payment is not listed on the February MOR, as filed. This transaction is problematic as the account the Debtor used during this period was a BOA account in his wife's name that could only be accessed by his wife. There is no explanation of why she is transferring money to an account not identified and not owned by the Debtor.

  i. The BOA statement ending 3604 shows credit card payment to Capital One Bank in the amount of $414.35. There is no explanation for such payment – if the obligation is prepetition it should not be paid from post-petition assets and if the obligations is post-petition, the Debtor is not authorized to incur debt without court authority.

<u>Report for 2/24/17 – 3/28/17</u>

11. The Debtor filed the MOR for the period from 2/24/17 through 3/28/17 on June 28, 2017 (docket no. 124). An Amended MOR was filed on June 29, 2017 (docket no. 128) (the "March MOR").

12. The March MOR is deficient for the following reasons:

  a. The beginning and ending cash balances do not match the balances on the bank statements attached to the March MOR.

  b. The March MOR indicates that $6,000 was paid for "legal/professional fees/U.S. Trustee fees" but does not provide a court order authorizing such payment, as required by the Guidelines. Further, the original March MOR indicated

4

that $13,000 was paid for legal fees and there is no explanation in the Amended MOR for the discrepancy between the original and amended reports.

      c.      The March MOR indicates that the Debtor used two accounts, M&T ending 3648 and BOA account ending 3604, but fails to attach a copy of the M&T account statement. This is needed as the balance in the M&T account changed from $3,390 on the prior report to zero in this report, with no explanation as to whom the funds were paid or what account the funds were transferred.

      d.      The Debtor failed to complete the Cash Receipts Detail and the Cash Disbursements Detail, so parties are unable to determine to whom checks were paid and the purpose of such payments.

      e.      The BOA statement ending 3604 attached to the MOR shows that the Debtor made cash withdrawals totaling $4,000, without any explanation of how such funds were spent and the purpose of the payments.  Further, checks were written to either cash or the Debtor totaling $1,250, again without any explanation of how such funds were spent and the purpose of the payments.

      f.      The BOA statement ending 3604 shows credit card payments to Capital One Bank in the amount of $350, Nordstrom Bank in the amount of $754.36 and Berkshire Bank in the amount of $400. There is no explanation for such payments – if the obligations are prepetition they should not be paid from post-petition assets and if the obligations are post-petition, the Debtor is not authorized to incur debt without court authority.

  g. The March MOR indicates that the Debtor made a mortgage payment in the amount of $3,906, yet the BOA statement ending 3604 does not show any payments made in that amount.

Report for 3/29/17 – 4/25/17

  13. The Debtor filed the MOR for the period from 3/29/17 through 4/25/17 on June 28, 2017 (docket no. 125) (the "April MOR").

  14. The April MOR is deficient for the following reasons:

  a. The beginning and ending cash balances do not match the balances on the bank statements attached to the MOR.

  b. The April MOR indicates that $13,000 was paid for "legal/professional fees/U.S. Trustee fees" but does not provide a court order authorizing such payment, as required by the Guidelines.

  c. The April MOR indicates that the Debtor in Possession used two accounts, M&T account ending 3648 and BOA account ending 3604, but fails to attach a copy of the M&T account statement.

  d. The Debtor failed to complete the Cash Receipts Detail and the Cash Disbursements Detail, so parties are unable to determine to whom checks were paid and the purpose of such payments.

  e. The BOA statement ending 3604 shows that the Debtor made cash withdrawals totaling $6,918.03 for the period, without any explanation of how such funds were spent and the purpose of the withdrawals.

  f. The BOA statement ending 3604 shows a credit card payment to Capital One Bank in the amount of $185. There is no explanation for such payment – if

the obligation is prepetition it should not be paid from post-petition assets and if the obligation is post-petition, the Debtor is not authorized to incur debt without court authority.

    f.    The BOA statement ending 3064 shows a payment of $900.00 made to Zakroff & Associates, a law firm, without any explanation for the payment of legal fees without a court order.

    g.    The BOA statement ending 3604 shows that on April 19, 2017, the sum of $27,460.07 was debited from the account for a "legal order," and that on April 21, 2017, $17,460.07 was credited to the account for a "legal order reversal." The April MOR provides no explanation for these transactions or for the missing $10,000.00.

    h.    The BOA statement ending 3604 shows a deposit of $3,252.43, without any explanation of the source of such payment.

    i.    The BOA statement ending 3604 shows a transfer of $15,000.00 to a savings account, without any explanation and without a copy of the savings account statement. There is no saving account listed on the MOR.

<u>Report for 5/1/17 – 5/31/17</u>

15.    The Debtor filed the MOR for the period from 5/1/17 through 5/31/17 on July 27, 2017 (docket no. 140) (the "May MOR").

16.    The May MOR is deficient for the following reasons:

    a.    The beginning and ending cash balances do not match the balances on the bank statements attached to the May MOR.

    b. The May MOR indicates that $10,000 was paid for "legal/professional fees/U.S. Trustee fees" but does not provide a court order authorizing such payment, as required by the Guidelines.

    c. The Debtor failed to complete the Cash Receipts Detail and the Cash Disbursements Detail, so parties are unable to determine to whom checks were paid and the purpose of such payments.

    d. The M&T account ending 2455 shows that a DIP checking account has finally been opened, but shows no activity as the non-DIP BOA account ending 3604 is still being used as the main account.

    e. The M&T account ending 2851 shows that this is not a DIP account and is a joint account with the Debtor's non-filing spouse. The statement further shows that this account is overdrawn, with no explanation for the need for this account or the reason for the negative balance.

    f. The BOA account ending 6063 statement shows a cash withdrawal of $2,671.34, without any explanation of how such funds were spent and the purpose of the withdrawal.

    g. The BOA account ending 3604 statement shows a credit card payment to Capital One Bank in the amount of $280.95. There is no explanation for such payment – if the obligation is prepetition it should not be paid from post-petition assets and if the obligation is post-petition, the Debtor is not authorized to incur debt without court authority.

  h. The BOA account ending 3604 shows a deposit of $1,000 on 5/22/17 and counter credit of $5,000 on 5/23/17, without an explanation of the source of such deposits.

  i. The BOA account ending 3604 shows a "customer withdrawal" of $28,000 on 5/15/17, without any explanation of the reason for the withdrawal or to whom the funds were paid and the purpose of such withdrawal.

Report for 6/1/17 – 6/30/17

17. The Debtor filed the MOR for the period from 6/1/17 through 6/30/17 on July 27, 2017 (docket no. 141) (the "June MOR").

18. The June MOR is deficient for the following reasons:

  a. The beginning and ending cash balances do not match the balances on the bank statements attached to the June MOR.

  b. The June MOR indicates that $10,000 was paid for "legal/professional fees/U.S. Trustee fees" but does not provide a court order authorizing such payment, as required by the Guidelines.

  c. The Debtor failed to complete the Cash Receipts Detail and the Cash Disbursements Detail, so parties are unable to determine to whom checks were paid and the purpose of such payments.

  d. The M&T account ending 2455 shows a deposit of $2,300 on 6/5/17, with no explanation of the source of the deposit. This account also shows a check paid on 6/6/17 in the amount of $2,000.00, with no explanation as to whom the check was paid and the purpose of such payment.

e. The M&T account ending 2851 shows that this is not a DIP account and is a joint account with the Debtor's non-filing spouse. The statement further shows that this account is overdrawn, with no explanation for the need for this account or the reason for the negative balance.

f. The BOA ending 3604 indicates "counter credits" of $7,400.00 on 5/31/17, $10,000.00 on 6/8/17 and $2,000.00 on 6/19/17, without an explanation of the source of such deposits.

g. The BOA statement ending 3604 shows deposits of $7,000.00 on 6/2/17, $1,100.00 on 6/23/17 and $1,000.00 on 6/26/17, without any explanation of the source of such deposits.

h. The BOA statement ending 3604 shows cash withdrawals of $14,000.00 on 5/30/17, $4,000.00 on 6/14/17 and $10,000.00 on 6/14/17, without any explanation of the reason for the withdrawal or to whom the funds were paid.

i. The BOA statement ending 3604 shows a payment to Remax Realty of $7,495.40 on 6/7/17, without any explanation and without any court order.

j. The BOA statement ending 3604 shows six credit card payments to American Express Bank totaling $1,200, payment to Capital One Bank in the amount of $340 and to Berkshire Bank in the amount of $250. There is no explanation for such payments – if the obligations are prepetition they should not be paid from post-petition assets and if the obligations are post-petition, the Debtor is not authorized to incur debt without court authority.

General Issues

19. In addition to the specific issues raised in each the MORs filed to date, the Committee has several general problems with the reporting of the Debtor, as more fully addressed below.

20. The Committee is concerned by the Debtor's continued failure to use a DIP account. The MORs filed show that all of the Debtor's post-petition wages were deposited into non-DIP accounts, which accounts were controlled by the Debtor's non-filing spouse. Despite the conversion of the case to Chapter 11 in February of this year, as of the June MOR, the Debtor was still not using a debtor in possession account for the deposit of his wages or the payment of his expenses. The Debtor has been using, for the most part, his wife's account at Bank of America, a non-DIP account in which he is not an owner or a signatory. The Debtor's explanation for the failure to use a DIP account was first that the DIP account was accidentally established as a savings account, but no DIP savings account statement has been produced or even identified in the MORs. The Debtor then said that a bank error prevented him from obtaining checks for his DIP account, and then the Debtor indicated that he had not been able to obtain a bank card for his DIP account. There is simply no plausible explanation that has been provided by the Debtor for a six-month delay in establishing a DIP account.

21. The Committee is concerned by the Debtor's large cash withdrawals and cash payments from these non-DIP accounts, without any accounting. During this five-month period, the Debtor has made cash withdrawals totaling at least $80,639.37 ($9,800 in February, $5,250 in March, $6,918.03 in April, $2,671.34 and $28,000 in May, and $28,000 in June). During this period, the Debtor made deposits not related to his wages

totaling $33,500 ($6,000 in May, $2,300 and $27,500 in June). There are no explanations for such debits and credits and the Committee is completely unable to determine what expenses are being paid from these withdrawals and whether such expenses are legitimate in the context of this bankruptcy proceeding. The Committee believes that the Debtor should provide a detailed accounting of all such cash withdrawals and deposits.

22. The Committee is concerned by the Debtor's failure to have taxes withheld from his wages. The Debtor, in his March MOR, provided the following explanation for unusual financial transactions:

> "Despite being a W2 Employee, firm treated me as a partner with deductions only for SS, Med., Ins. This is being corrected to reflect withholdings beginning May, 2017. Expected Tax Deductions will amount to approx. 5000.00 Federal Withholding (per month), Social Security 1210.00, and other (Medicare, Medicaid) $1100, and Maryland $2050. I will be making catch-up tax payments each and they will appear as checks written to IRS as Additional Estimated Tax Payments. All Tax Payments Due for 2016 (Fed & State) plus 1Q Fed. & State Estimated Payments were timely made. Checks received on DIP account on April 17, 2017. Finalizing minimal fee disb to M&T to close accts.

23. The May and June MORs indicate that no changes have been made to the Debtor's withholdings as the amount of his net income has not changed during these periods. Further, there is nothing shown on the MORs to indicate that payments have been made the IRS or State of Maryland for 2017 estimated taxes, other than a single payment to the IRS for estimated taxes of $1,154. The Committee is concerned that a failure to pay estimated taxes will create an administrative expense for the estate.

24. The failure to have taxes properly withheld or to pay estimated taxes timely is concerning as the Debtor is required to remain current on all post-petition federal, state and local taxes as a condition of remaining a debtor in possession pursuant to 11 U.S.C.

§ 1112(b)(4)(I). The Debtor should provide the basis for the amounts of the estimated payments and the timing of such payments.

25. The Committee is concerned about the legal fees that the Debtor is paying without court approval. Through June, the Debtor has paid at least $45,000 in legal fees - $6,000 in February, $6,000 (or $13,000, depending on which report you believe) in March, $13,000 in April, $10,000 in May and $10,000 in June. This Court entered only one order authorizing the payment of a retainer of $10,000 to Bernard Grimm. The Committee does not understand to whom the remaining legal fees have been paid and under what authority the Debtor believes that he can make such payments. The Committee believes all such unauthorized post-petition transfers should be fully identified and recovered for the benefit of the bankruptcy estate.

26. Further, in April, the Debtor paid Zakroff & Associates, a law firm in Bethesda, the sum of $900. Again, the Committee does not understand under what authority the Debtor believes that he can make such payment without a court order. This unauthorized post-petition transfer should be recovered for the benefit of the bankruptcy estate.

27. Even more concerning is that in addition to those payments shown on the MORs filed to date, the Committee has received the Debtor's bank statement for July and it shows an additional payment to Bernard Grimm in the amount of $12,000. Again, the Committee does not understand under what authority the Debtor believes that he can make such a payment without court order. This unauthorized post-petition transfer should be recovered for the benefit of the bankruptcy estate.

28. The Committee is concerned by the Debtor's payment of credit card obligations. During this period, the Debtor made credit card payments totaling $4,174.66 ($414.35 in February, $1,504.36 in March, $185 in April, $280.95 in May and $1,790 in June) from the BOA account ending 3604. If these are pre-petition credit card obligations, they should not be paid from post-petition assets; if they are post-petition credit card obligations, the debtor should not incur debt without court authority. These unauthorized post-petition transfers should be recovered for the benefit of the bankruptcy estate.

29. In addition to the concerns raised by the MORs that have been filed, the Committee is troubled by some of the expenses it can identify from bank statements and canceled checks provided by the Debtor to the Committee that are not part of the MORs filed with the Court. For example, the Debtor paid his wife, Lauren Cottone, the sum of $3,000 in February. No explanation for such payment was provided. In June, the Debtor paid $7,495.40 to Remax Realty. Again, the Debtor provides no court order or explanation for such payment. This unauthorized post-petition transfer should be recovered for the benefit of the bankruptcy estate. In June, the Debtor negotiated a check made payable to "Cash" in the amount of $2,000. The notation on the check was "For Garry [sic] Greenblatt." Counsel for the Committee can assure this Court that this check was not paid to or negotiated by Gary Greenblatt. Copies of these transfers are attached as Exhibit 2.

30. The Committee is troubled by the transactions in April wherein $27,460.07 was debited from the BOA account ending 3604 on 4/19/17 and $17,460.07 was credited on 4/21/17. The April MOR provides no explanation for the "legal order" and "legal order reversal" that were the basis for the debit and credit and provides no explanation of why

$10,000 was not credited to the BOA account ending 3604. The Debtor should be acting to recover this unauthorized debit.

31.   During this five-month period, the Debtor has incurred bank fees and charges of more than $600, mainly due to overdrafts and bounced checks. The Debtor has provided no explanation for there being insufficient funds in the account.

32.   In summary, this is an individual chapter 11 case. It is even more important in an individual case that the Court, the Committee and the U.S. Trustee can review, on a timely basis, the income generated by the Debtor and the expenses being incurred and paid by the Debtor, to determine the viability of the chapter 11 case and the likelihood of a plan that can be confirmed by the Court.

33.   The MORs filed by the Debtor were filed untimely, so the parties had no ability to address and prevent further deficiencies. Further, the MORs filed by the Debtor are woefully inadequate to provide even a modicum of information needed to provide oversight of the Debtor and estate assets.  The Debtor's ongoing failure to comply with the requirements as a debtor in possession and to comply with the U.S. Trustee Guidelines causes the Committee to be concerned about the Debtor's commitment to the chapter 11 proceeding.

34.   In order to monitor the activity of the Debtor, it is imperative that the debtor in possession utilize but one debtor in possession account and provide a full accounting monthly as required by the U.S Trustee Guidelines in the operating reports. The Debtor cannot utilize cash withdrawals and cash deposits. The Debtor should be instructed to utilize only the DIP account and to cease the cash withdrawals and cash deposits.

35. Further, the Debtor cannot continue to make payments to parties that require court approval prior to obtaining such approval, and the Debtor should be required to recover all payments made to professionals without court authority, including payments for legal fees and the payment to Remax.

36. Pursuant to Rule 9013-2 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Maryland, the Committee states that, in lieu of submitting a memorandum in support of this Motion, it will rely solely upon the grounds and authorities set forth herein.

37. For those reasons stated above, the Committee seeks the entry of an order compelling the Debtor to file amended monthly operating reports to address all of the stated deficiencies within fifteen (15) days, compelling the Debtor to file all future reports timely, requiring the Debtor to provide a detailed accounting of all cash withdrawals and deposits, compelling the Debtor to initiate recovery of those payments made to professionals without court authority and to provide evidence of all such efforts within fifteen (15) days, and requiring the Debtor to restrict his use of cash withdrawals.

WHEREFORE, the Official Committee of Unsecured Creditors of Erik B. Cherdak respectfully requests that the Court issue an order:

a. Compelling the Debtor to file amended monthly reports that comply with the U.S. Trustee Guidelines within fifteen (15) days;

b. Compelling the Debtor to file all future monthly operating reports due to be by the 20th of the month next following the period covered by the report;

c. Compelling the Debtor to initiate the recovery of those post-petition transfers made to professionals and Remax without court authority within fifteen (15) days

and to provide a status report of such efforts each 30 days thereafter;

  d. Restricting the Debtor from making cash withdrawals and deposits and requiring an accounting for all such cash transactions made to date; and

  e. For such other and further relief as the nature of this case may require.

        /s/ Gary R. Greenblatt
        Gary R. Greenblatt, Bar no. 02870
        grgreen@mehl-green.com
        Constance M. Hare, Bar no. 22512
        cmhare@mehl-green.com
        MEHLMAN, GREENBLATT & HARE, LLC
        723 South Charles Street, Suite LL3
        Baltimore, Maryland 21230
        (410) 547-0300 – telephone
        (410) 547-7474 – fax

        Attorneys for the Official Committee of
        Unsecured Creditors of Erik B. Cherdak

## CERTIFICATE OF SERVICE

  I HEREBY CERTIFY that on this 7th day of August, 2017, a copy of the foregoing Motion was transmitted by ecf to:

Justin P. Fasano, Esquire
McNamee, Hosea, Jernigan,
 Kim, Greenan & Lynch, PA
6411 Ivy Lane, Suite 200
Greenbelt, MD 20770

Bernard S. Grimm, Esquire
1200 19th Street NW
3rd Floor
Washington, DC 20036

Lynn A. Kohen, Esquire
U.S. Trustee's Office
6305 Ivy Lane, Suite 600
Greenbelt, MD 20770

Morgan W. Fisher, Esquire
Law Office of Morgan W. Fisher LLC
1125 West Street, Suite 227
Annapolis, MD 21401

Michael G. Campbell, Esquire
Miller, Miller & Canby
200B Monroe Street
Rockville, MD 20850

Valerie Smith, Senior Manager
PRA Receivables Management LLC
P.O. Box 41021
Norfolk, VA 41021

Randa S. Azzam, Esquire
Samuel I. White, PC
611 Rockville Pike, Suite 100
Rockville, MD 20852

/s/ Gary R. Greenblatt
Gary R. Greenblatt